## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) CHILD DOE 1, a minor, by and through her parent and next friend, JANE DOE 1; | |
| (2) CHILD DOE 2, a minor, by and through her parents and next friends, JOHN DOE and JANE DOE 2, | |
| Plaintiffs, | |
| v. | |
| (1) INDEPENDENT SCHOOL DISTRICT NO. 25 OF ADAIR COUNTY a/k/a STILWELL PUBLIC SCHOOLS, a Political Subdivision of the State of Oklahoma; | Case No: CIV-24-174-JAR |
| (2) LAWRENCE FOURKILLER; | |
| (3) GERI GILSTRAP; | |
| (4) MARK LEA; | ATTORNEY LIEN CLAIMED |
| (5) MATTHEW BRUNK; | JURY TRIAL DEMANDED |
| Defendants. | |

## **COMPLAINT**

**COMES NOW** the Plaintiffs, by and through their attorneys of record, and for their cause of action against the Defendants, Independent School District No. 25 of Adair County a/k/a Stilwell Public Schools, Lawrence Fourkiller, Geri Gilstrap, Mark Lea, and Matthew Brunk, set forth and state as follows:

## **INRODUCTION**

1. During the 2022-2023 school year, CHILD DOE 1 and CHILD DOE 2 ("the Plaintiffs") were two (2) of the many female students at Stilwell Elementary School who were subjected to

daily sexual abuse and harassment from their fourth-grade teacher, Lawrence Fourkiller.

2.  While on Stilwell Elementary School grounds and during school hours, Defendant Fourkiller repeatedly preyed on female students, even after multiple parents and students had informed the District of Fourkiller's predatory behavior.

3.  For instance, during the 2021-2022 school year, another Stilwell Elementary School student reported to the Elementary School principal, Mark Lea, that Fourkiller had inappropriately stuck his hand up her shirt and down her pants on numerous occasions.

4.  Despite the concerning report, neither Lea nor anyone else in the District investigated the allegation or reported it to authorities. As a result, Fourkiller was not punished and instead continued to have unsupervised access to prey on Stilwell Elementary School students, like the Plaintiffs.

5.  With unfettered access to female students, Fourkiller's predatory behavior continued during the 2022-2023 school year, where he proceeded to sexually harass and abuse the female students in his class on an almost daily basis.

6.  In late October 2022, CHILD DOE 2 told her mother, JANE DOE 2, about Fourkiller's behavior. In response, JANE DOE 2, along with the parents of three (3) other victims, met with Defendant Matthew Brunk and informed him that Fourkiller had been inappropriately touching their children.

7.  And just like the prior report from the 2021-2022 school year, the District did not investigate, report, or attempt to remediate the sexual abuse.

8.  As a result of the Defendants' deliberate indifference, the Plaintiffs had to live in fear every day while at school in the continual presence of their assailant.

9.  The District did nothing to address Fourkiller's predatory behavior until late March

2023, when it received a report from a former student in Fourkiller's 2020-2021 second-grade class that Fourkiller had forced the second-grade student to suck his penis under his desk.

10. As a result of the March 2023 report, a criminal investigation was initiated, whereby a total of twelve (12) individuals reported being abused by Fourkiller. On June 14, 2023, a grand jury in the Eastern District indicted Fourkiller on six (6) charges related to his alleged sexual abuse of Stilwell students. *See* Indictment, Dkt. #2, filed in *USA v. Fourkille*r, Eastern District Case No. 23-cr-00106-JFH (hereinafter referred to as "the Criminal Case").[1]

11. The Defendants acted with deliberate indifference to the sexual harassment and assaults suffered by the Plaintiffs. Their practice of ignoring and downplaying sexual harassment of female students is blatant sex discrimination. It is also evidence of the school district's failure to adequately train administrators and employees to recognize, prevent, and address sexual harassment, educate students about district policies and procedures on harassment, and enforce those policies and procedures.

## PARTIES, JURISDICTION AND VENUE

12. Plaintiff CHILD DOE 1 is, and was at all times relevant herein, a resident of Adair County, Oklahoma, residing with her mother, JANE DOE 1. CHILD DOE 1 is suing the Defendants through her parents and next friend, JANE DOE 1.

13. Plaintiff CHILD DOE 2 is and was at all times relevant herein, a resident of Adair County, Oklahoma, residing with her parents, JOHN DOE and JANE DOE 2. CHILD DOE 2 is

---

[1]    On October 12, 2023, a Superseding Indictment was entered, charging Fourkiller with an additional four (4) counts, bringing the total charges to ten (10). *See* Superseding Indictment, Dkt. #33, filed in the Criminal Case. Each of the ten charges corresponded to Fourkiller's abuse of a District student. By way of example, Count One of the Superseding Indictment relates to Fourkiller's actions towards "Victim 1", Count Two relates to Fourkiller's assault of "Victim 2", and so on and so forth. *Id.*

suing the Defendants through her parents and next friends, JOHN DOE and JANE DOE 2.

14.    Defendant Independent School District No. 25 of Adair County, a/k/a Stilwell Public Schools (hereinafter "the District" or "SPS") is a political subdivision, organized and existing under the laws of the State of Oklahoma, with its facilities and schools located in Adair County, Oklahoma. The District receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688.

15.    The District is responsible for all facets of school operations and programs within the City of Stilwell school district, including the staffing and training of key positions, such as school staff and Title IX administrators.

16.    Stilwell Elementary School, located at 10 S 6th St, Stilwell, OK 74960, is one of the four (4) schools operated by the District.

17.    Upon information and belief, Defendant Lawrence Fourkiller ("Fourkiller") was a resident of Adair County, Oklahoma, at all times relevant hereto. During all times herein, Defendant Fourkiller was an agent and/or employee of the District acting within the scope, course, and authority of his employment as a teacher at Stilwell Elementary School.

18.    Upon information and belief, Defendant Geri Gilstrap ("Gilstrap") was and is a resident of Adair County, Oklahoma, at all times relevant hereto. During all times herein, Defendant Gilstrap was an agent and/or employee of the District acting within the scope, course, and authority of her employment as the Superintendent of the District. Furthermore, Defendant Gilstrap was responsible for the District's adherence to Title IX.

19.    Upon information and belief, Defendant Mark Lea ("Lea") was and is a resident of Adair County, Oklahoma, at all relevant times. During all times herein, Defendant Lea was an agent and/or employee of the District acting within the scope, course, and authority of his

employment as the Stilwell Elementary School Principal.

20.    Upon information and belief, Defendant Matthew Brunk ("Brunk") was and is a resident of Adair County, Oklahoma, at all relevant times. During all times herein, Defendant Brunk was an agent and/or employee of the District acting within the scope, course, and authority of his employment as the District's Assistant Superintendent.

21.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1334 because the matters in controversy arise under the Constitution and laws of the United States. Specifically, Plaintiffs assert claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

22.    This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy arising under the United States Constitution and federal law.

23.    The District was timely placed on notice of the Plaintiffs' tort claims in conformance with the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. § 156. The District took no formal action upon receipt of the Plaintiffs' Tort Claim Notices and the same was deemed denied ninety (90) days thereafter and, pursuant to Okla. Stat. tit. 51 § 157, this action is timely filed.

24.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the Defendants reside within this Court's judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

25.    Paragraphs 1-24 are incorporated herein by reference.

- **FOURKILLER'S PATTERN OF ABUSE AND HARASSMENT**

26.    Lawrence Fourkiller was hired by the District in the summer of 2018 to work as a second-grade teacher at Stilwell Elementary School.

27.    At the time of Fourkiller's hiring, Defendant Lea served as the Stilwell Elementary School principal and was ostensibly Fourkiller's supervisor.

28.    Fourkiller's predatory behavior began in earnest during the 2019-2020 school year, as four (4) of the victims identified in the Superseding Indictment filed in the Criminal Case were students in Fourkiller's 2019-2020 second-grade class.

29.    Those four (4) victims described the abuse they suffered during the 2019-2020 school year as follows:

a.  Victim 1 described that Defendant put his finger in her 'private spot' where girls pee. Victim 1 reported that she discovered blood in her urine following the abuse, which required her to go to the hospital because her 'private spot' burned. Victim 1 also described Fourkiller touching himself while he touched her, including moving his hand up and down in his pants.

b.  Victim 4 reported that Fourkiller would place his hands down her shirt and in her pants when she asked him questions in class. Victim 4 stated that Fourkiller would stand behind her at her desk and place his hands down her shirt. Fourkiller would also touch Victim 4's stomach, under her clothes. Victim 4 further explained that Fourkiller would make her sit on his lap when Victim 4 went to Fourkiller's desk to ask questions. While sitting on his lap, Fourkiller would put his hand down Victim 4's pants and touch her stomach and upper thigh.

c.  Victim 5 reported that Fourkiller would make her and other female students hug him before allowing them to leave the classroom to use the restroom. Victim 5 stated that "these were not quick side hugs" but that he would use both hands and wouldn't let go. Victim 5 then stated that when she had questions, Fourkiller would call her to his desk, spread his legs, have her stand between his legs, and touch her butt.

d.  Victim 6 stated that every time she went to Fourkiller for help, he would touch her "privates." Victim 6 described how the defendant would make her sit on his lap and then reach into her pants to touch her on the outside of her underwear. Victim 6 further reported that Fourkiller "put his fingers on" her vagina.

30.    Fourkiller's abuse continued during the 2020-2021 school year, with at least two

(2) other students. One such student, Victim 3 in the Superseding Indictment, reported that Fourkiller would make her sit on his lap. Victim 3 explained that while sitting in Fourkiller's lap he would touch her upper thighs, near her genitals, and her stomach.[2]

31.    During the 2021-2022 school year, one of Fourkiller's students from the 2019-2020 school year (Victim 1 in the Superseding Indictment) reported to her third-grade teacher that she had been touched inappropriately by her second-grade teacher. The teacher notified District administration, and a meeting was arranged with the student and Stilwell Elementary School principal Mark Lea.

32.    During this meeting, the student reported to Defendant Lea that Fourkiller routinely called her up to his desk and put his hand up her shirt and down her pants.

33.    Unfathomably, Defendant Lea and the District did not investigate the allegations made by Victim 1 and allowed Fourkiller to continue teaching his second-grade class.

34.    Notably, the District and its employees failed to report the allegations of Fourkiller's misconduct to the Oklahoma Department of Human Services ("DHS") and law enforcement, as required by Oklahoma law. *See* 10A O.S. § 1-2-101(B)(1); 70 O.S. §1210.163(A) ("Every school employee having reason to believe that a student under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter immediately to the Department of Human Services and local law enforcement.").[3]

35.    There have been further reports that prior to the 2022-2023 school year, the District

---

[2]    The other student who was abused by Fourkiller during the 2020-2021 school year (Victim 2 in the Superseding Indictment) is discussed at greater length below.

[3]    *See* United States' Motion *in Limine*, Dkt. #57 at p. 5, filed in the Criminal Case (the report Defendant Lea received from Victim 1 during the 2021-2022 school year "was never reported to members of law enforcement.").

had also received notice that Fourkiller possessed pornography on his school computer.[4] This incident was similarly brushed under the rug by the District, and Fourkiller continued to have unfettered access to the Stilwell Elementary School students.

36.    Had the District conducted any kind of investigation into the aforementioned allegations, the District would have likely discovered that Fourkiller had been systematically harassing and abusing the female students in his class.

37.    Unfortunately, the District failed and/or refused to investigate the concerning behavior of Fourkiller and instead allowed him to continue to have unsupervised access to female students, like the Plaintiffs.

- **FOURKILLER'S ABUSE AND HARASSMENT OF THE PLAINTIFFS**

38.    Following Victim 1's report during the 2021-2022 school year, Fourkiller's sexual harassment predictably continued during the 2022-2023 school year.

39.    Defendant Fourkiller was re-assigned to teach fourth grade at Stilwell Elementary School for the 2022-2023 school year.

40.    The Plaintiffs were in Lawrence Fourkiller's 4th grade class during the 2022-2023 school year and were two of the many students who were subjected to Fourkiller's daily harassment.

41.    Fourkiller's abuse of CHILD DOE 1 began early in the 2022-2023 school year, with Fourkiller asking the then nine (9) year-old sexually illicit questions. CHILD DOE 1 recalls

---

[4]    *See*, Alex Cash, *Stilwell community members react to multiple sex abuse charges of former elementary school teacher*, Fox 23, https://www.fox23.com/news/stilwell-community-members-react-to-multiple-sex-abuse-charges-of-former-elementary-school-teacher/article_31c22736-1d33-11ee-9c73-13c394928dba.html?utm_medium=social&utm_source=email&utm_campaign=user-share

Fourkiller asking:

    a)  if she had been sexually active,

    b)  if there were cameras in her house,

    c)  if she showered alone, and

    d)  if she lived alone.

42.     During one of these conversations, Fourkiller informed CHILD DOE 1 of a previous sexual encounter he had with his cousin. Fourkiller explained to CHILD DOE 1 that he had explored his cousin's "kitty." Fourkiller described how much fun he and his cousin had during that encounter.

43.     Fourkiller's abuse of CHILD DOE 1 quickly turned physical. On one occasion, while rubbing CHILD DOE 1's back, Fourkiller began running his hand along CHILD DOE 1's bra strap. While rubbing CHILD DOE 1's back, Fourkiller asked CHILD DOE 1 what she had on underneath her shirt.

44.     On another occasion, CHILD DOE 1 recalls falling asleep on her desk and being woken up by Fourkiller touching her breasts.

45.     Like CHILD DOE 1, Fourkiller's predatory behavior towards CHILD DOE 2 included Fourkiller routinely placing his hands on CHILD DOE 2 in a sexually inappropriate manner.

46.     Fourkiller routinely placed his hands under CHILD DOE 2's shirt and rubbed her shoulders and stomach.

47.     CHILD DOE 2 further explained how Fourkiller frequently placed his hand on her bottom while rubbing her back.

48.     In addition to personally experiencing Fourkiller's abuse, CHILD DOE 2 described

witnessing Fourkiller inappropriately touch other students on a near daily basis.

49.     In fact, Fourkiller's predatory conduct was so prevalent that CHILD DOE 2 and other female students in Fourkiller's class had developed non-verbal codes to signal to each other when they needed protection from Fourkiller.

50.     Two other students in the Plaintiffs' class also came forward with reports regarding Fourkiller's pattern of sexual harassment and abuse during the 2022-2023 school year.

51.     One such victim explained that Fourkiller "touches all of the girls' bottoms." Another victim reported observing Fourkiller touch female students' heads when he walked past the students' desks. According to this student, Fourkiller would escalate his conduct from simply touching the students' heads to rubbing their backs and necks.

52.     Being subjected to the aforementioned harassment on a daily basis while at school understandably took a significant toll on the Plaintiffs.

- **PLAINTIFFS' REPORTS OF ABUSE AND THE DISTRICT'S INDIFFERENCE**

53.     On or around September 22, 2022, CHILD DOE 1 came home from school upset and informed JANE DOE 1 about Fourkiller's predatory conduct.

54.     The following day, September 23, 2022, JANE DOE 1 went to the Stilwell Elementary School and spoke with Defendant Mark Lea in his office. JANE DOE 1 proceeded to inform Defendant Lea that Fourkiller had been speaking inappropriately to CHILD DOE 1 and had been touching her inappropriately. JANE DOE 1 requested an in-person meeting with Lea, Fourkiller, and Rachelle English, who was JANE DOE 1's teacher.

55.     Lea scheduled a meeting for the next Wednesday, September 28, 2022.

56.     On the afternoon of September 27, 2022, JANE DOE 1 called Defendant Lea to confirm their meeting for the next morning. Lea confirmed that Fourkiller and Rachelle English

would be present but that he would not be attending. Lea told JANE DOE 1 that there wasn't any need for him to be in the meeting because he didn't think anything had occurred because it was a "he said, she said" situation.

57.   JANE DOE 1 attended the meeting on September 28, 2022, whereby she proceeded to confront Fourkiller and English about Fourkiller's conduct. Fourkiller predictably denied that he had done anything inappropriate, and English stood up for Fourkiller, telling JANE DOE 1 that the District wouldn't allow him to keep teaching if he was touching female students inappropriately.

58.   Shortly after the September 28, 2022 meeting concluded, JANE DOE 1 called Defendant Geri Gilstrap to express her concerns. First, JANE DOE 1 outlined the specifics of Fourkiller's predatory behavior towards CHILD DOE 1. JANE DOE 1 additionally expressed her concern and frustration regarding Defendant Lea's handling of her complaint.

59.   Defendant Gilstrap told JANE DOE 1 that she was not aware of her report to Defendant Lea, but that she would speak to him and get to the bottom of the situation and get back with her.

60.   After not hearing anything from Gilstrap or anyone else at the District for approximately a week, JANE DOE 1 contacted Gilstrap for an update. Eventually, JANE DOE 1 was able to speak with Gilstrap, who informed JANE DOE 1 that she didn't have any update because she had not yet spoken to Fourkiller, Lea, or English about JANE DOE 1's complaints.

61.   On or around October 26, 2022, CHILD DOE 2 and another student in Fourkiller's 2022-2023 fourth-grade class disclosed to JANE DOE 2 that Fourkiller was inappropriately touching them and other female students in their class.

62.   On said date, CHILD DOE 2 and JANE DOE 2 were unaware of CHILD DOE 1

and JANE DOE 1's previous reports to the District about Fourkiller.

63.    Concerned by CHILD DOE 2's report, JANE DOE 2 contacted the mother of the other victim and the parents of a few other students whom CHILD DOE 1 indicated were also victims of Fourkiller to discuss what their daughters had reported

64.    There was a school program scheduled for the next morning, October 27, 2022. The parents decided that at the conclusion of the program, they were going to collectively report Fourkiller's behavior to the District.

65.    On or around 10:00 a.m. on Thursday, October 27, 2022, after the school program had concluded, JANE DOE 2, along with the parents of three (3) other victims, went to the Stilwell Elementary School office and requested to speak with the Stilwell Elementary School Principal Mark Lea.

66.    The parents were informed that Defendant Lea and Superintendent Gaskins were not on campus that day, but that Assistant Superintendent Matthew Brunk was available to meet with them. The parents were then taken to Defendant Lea's office, where Defendant Brunk arrived shortly thereafter.

67.    During the meeting, which lasted approximately twenty minutes, each of the parents outlined what they had been told by their daughters regarding Fourkiller inappropriately touching, patting, and hugging the young girls.

68.    After listening to the parents explain what their daughters had experienced in Fourkiller's class, Brunk made several assurances regarding how the District was going to address the allegations. More specifically, Brunk indicated that the District would do the following:

    a)  send Fourkiller home;

    b)  conduct an investigation;

c) bring in outside counselors to meet with the victims; and

d) that the Oklahoma Department of Human Services ("DHS") would likely be notified.

69.    Following the meeting, Fourkiller was sent home from school, as promised by Brunk.

70.    However, the remaining assurances did not come to fruition.

71.    Upon information and belief to be confirmed through discovery, after the October 27, 2022 meeting, Defendant Brunk notified both Defendant Gaskins and Defendant Lea of the parents' reports regarding Defendant Fourkiller's inappropriate conduct towards female students.

72.    On the Monday following the parents' meeting with Defendant Brunk (October 31, 2022), Defendant Mark Lea called JOHN DOE 2 to inform him that Fourkiller would be returning to school that day. According to Lea, he spoke with Fourkiller about the parents' complaints and instructed Fourkiller not to touch his female students outside of an occasional high five.

73.    Upon information and belief to be confirmed through discovery, Lea's "investigation" consisted of a single conversation with Fourkiller. Based on that brief conversation, Defendant Lea unilaterally determined that Fourkiller's touching of the female students in his class was not sexual in nature, and as such, no further action was required.

74.    Notably, Defendant Lea was the District administrator who had received Victim 1's report about Fourkiller during the 2021-2022 school year. As such, Defendant Lea would have been aware of at least four (4) different Stilwell Elementary School students who had described similar predatory behavior on the part of Defendant Fourkiller.

75.    Despite the numerous reports of Fourkiller's sexually inappropriate conduct, Defendant Lea, on behalf of the District, determined that Fourkiller was qualified and/or suited to remain in the classroom with the very students who reported the abuse.

76.    To make matters worse, neither Defendant Lea, Defendant Gaskins, nor Defendant Brunk contacted law enforcement in response to the parents' October 27, 2022 report.[5]

77.    The Defendants also never initiated a formal Title IX investigation after receiving the reports of Fourkiller's sexual misconduct on October 27, 2022. Nor did any of the Defendants inform the parents of their rights under Title IX to have the sexual assaults investigated.

78.    In December 2022, JANE DOE 1 had not heard anything from Defendant Gilstrap or the District regarding her September 2022 complaint, so she contacted Defendant Gilstrap to ask why the District had not taken any action in response to her prior complaint. Gilstrap informed JANE DOE 1 that the District hadn't done anything because they were unable to substantiate the report. According to Gilstrap, it was a "he said/she said" situation, and she couldn't do anything without proof.

79.    As a result of the District's refusal to investigate Fourkiller and remove him from the classroom, the Plaintiffs were forced to be in the presence of their abuser all day, every day, while at school.

80.    It was not until March 18, 2023, when the school received yet another report of Fourkiller's illegal behavior, that the District finally took any steps to end the abuse.

81.    On or around March 18, 2023, a student from Fourkiller's 2020-2021 second-grade class (Victim 2 in the Superseding Indictment) reported that over the course of the 2020-2021 school year Fourkiller held her back from specialized classes like P.E. to get alone time with her. When they were ostensibly alone in his classroom, Fourkiller serially assaulted Victim 2. Victim

---

[5]    *See* United States' Motion in Limine, Dkt. #57 at p. 1, filed in the Criminal Case ("Despite SES being mandatory reporters, at no point did school administrators contact law enforcement or the Department of Human Services.").

2 described the abuse she experienced during a forensic interview, as follows:

> Victim 2 disclosed that two years ago, while she was a student in the defendant's second grade class, the defendant had her go under his desk and made her suck his penis. Victim 2 told the interviewer that "there is this thing that basically that he told me something that helped deceive me maybe – he called his penis squishy marker and made me suck it." Victim 2 demonstrated how the defendant would pull his pants down just enough to expose his penis…She described his penis as squishy, and soft. Victim 2 stated that white stuff would come out of the defendant's penis and that he would call it milk. She recalled that "he made me drink it sometimes."[6]

82.     In response to the appalling allegations from Victim 2, the District placed Fourkiller on administrative leave and **finally** contacted law enforcement.[7]

83.     After receiving the report, a criminal investigation was initiated that was ultimately conducted by the Federal Bureau of investigation ("FBI").

84.     Despite being on administrative leave pending the FBI's investigation, the District allowed Fourkiller to return to the school on or around May 15, 2023, for an athletic banquet.

85.     Following the investigation, a grand jury was convened on June 14, 2023, and Fourkiller was indicted on six (6) counts of felony child abuse. A warrant was subsequently issued, and Fourkiller was arrested on June 28, 2023.

86.     The Court in the Criminal Case unsealed the Indictment on July 3, 2023, and news of Fourkiller's arrest began making its rounds.

87.     In response to the reports of Fourkiller's abuse of the Stilwell Elementary School students, two (2) of Fourkiller's cousins came forward to law enforcement and reported that they,

---

[6]     *See,* Government's Notice of Intent to Admit Evidence of Other Child Molestation, Dkt. #50 at p. 2, filed in the Criminal Case.

[7]     The District never contacted the parents of the students in Fourkiller's fourth-grade class to alert them of the allegations or inform them that Fourkiller was not going to be at school. In fact, CHILD DOE 2 informed JANE DOE 2 that the District had told the students that Fourkiller wasn't at school because of food poisoning.

too, had been abused by Fourkiller when they were children.[8]

88.    Having not heard from the District regarding Fourkiller's arrest, JOHN DOE went to the Stilwell High School in late July 2023, to obtain the District's policies and procedures regarding the handling of sexual assault/harassment allegations against a teacher.[9] JOHN DOE and the other parents had not heard anything from the District following Fourkiller's arrest.

89.    While at the Stilwell High School on said day, JOHN DOE was approached by Defendant Brunk who asked if JOHN DOE would be willing to speak with him in his office.

90.    JOHN DOE agreed, and once in Brunk's office, Brunk proceeded to apologize for the District's handling of the situation, stating that the "whole Stilwell school system dropped the ball on this one."

91.    When JOHN DOE asked Brunk why nothing was done in response to the October 27, 2022 report, Brunk explained that after speaking with the parents on October 27, 2022, he informed Stilwell Superintendent Geri Gaskins of the allegations. According to Brunk, he assumed that Gilstrap was going to address the allegations appropriately and never followed up thereafter.

92.    On May 24, 2023, well into the FBI's investigation into Fourkiller, Superintendent Geri Gilstrap abruptly resigned from the District and Defendant Brunk was unanimously selected to take over as superintendent.

93.    After Fourkiller was arrested, Defendant Brunk, who had since been promoted to superintendent, issued the following statement:

Student safety is the greatest priority of Stilwell Public Schools. This spring, we received

---

[8]    *See,* Government's Notice of Intent to Admit Evidence of Other Child Molestation, Dkt. #50 at p. 2, filed in the Criminal Case.

[9]    Even after Fourkiller's arrest, the parents of Fourkiller's victims had not heard anything from the District.

a serious allegation regarding a district employee. The employee was immediately placed on administrative leave, and the matter was reported to the Oklahoma State Department of Human Services and law enforcement. The district has fully cooperated with – and will continue to cooperate with – all related investigations. Because this is a personnel matter, I am unable to share additional information at this time.[10]

94.    It is interesting that the very person who had received a report from three (3) separate parents just months prior, and the same person who informed JOHN DOE 1 that the "whole Stilwell school system dropped the ball" was asserting publicly that "[s]tudent safety is the greatest priority of Stilwell Public Schools."

- **THE DISTRICT'S FAILURE AND/OR REFUSAL TO INVESTIGATE FOURKILLER AND PROTECT STILWELL ELEMENTARY SCHOOL STUDENTS**

95.    Despite being notified of Fourkiller's predatory behavior during the 2021-2022 school year, Defendants Gaskins, Lea, and Brunk wholly failed and/or refused to investigate the allegations and thereby allowed Fourkiller to have unfettered, unsupervised access to Stilwell Elementary School students, including the Plaintiffs.

96.    Then after being notified of Fourkiller's predatory behavior on October 27, 2022, Defendants Gaskins, Lea, and Brunk again failed and/or refused to investigate Fourkiller and allowed him continued unfettered, unsupervised access to the Plaintiffs.

97.    The deliberate indifference of Defendants Gaskins, Lea, and Brunk in failing to investigate, remediate, and report Fourkiller's misconduct was in furtherance of and consistent with customs and/or practices that were promulgated, created, and/or implemented by the District.

98.    The District's deficient customs and practices resulted in a culture of indifference which allowed sexual predators, like Defendant Fourkiller, to prey on Stilwell Elementary School

---

[10]    *See, Former Stilwell Elementary Teacher Charged with Multiple Counts of Sex Abuse*, Fox23 (07/05/23), https://www.fox23.com/news/local/stilwell-public-school-employee-charged-with-6-counts-of-sexual-abuse-6-victims-all-under/article_c5df017c-1b81-11ee-a172-07c44bbc1611.html

students.

99.     The District's indifference toward sexual harassment of its students can be seen in Defendants Gaskins, Lea, and Brunk's failures to adhere to the District's Sexual Harassment of Students" policy (hereinafter referred to as "the Sexual Harassment Policy").

100.     The Sexual Harassment Policy averred that it was "the express policy of the board of education to encourage student victims of sexual harassment to come forward with such claims."[11]

101.     The Policy outlined the procedure by which a student or parent was to report sexual abuse and/or harassment as follows:

> Students who feel that administrators, supervisors, support personnel, teachers, or other students are subjecting them to sexual harassment are encouraged to report these conditions, or have their parents report these conditions, to the appropriate administrator or teacher…The employee to whom the report was made will provide notice of the report to the Title IX coordinator. The Title IX coordinator should then provide the appropriate paperwork to the student or parent/guardian so that the student (complainant) may file a formal complaint with the Title IX coordinator by mail, e-mail or as directed by the Title IX coordinator.

102.     The first problem with the District's enactment of the Sexual Harassment Policy can be seen in the fact that there is no indication that the District had designated a Title IX coordinator, as required by federal law.[12]

103.     According to a Dear Colleague Letter, issued by the Department of Education's Office for Civil Rights on April 24, 2015, the responsibilities of a Title IX Coordinator include the

---

[11]     The Sexual Harassment Policy appears to be the form policy issued by the Oklahoma State School Boards Association ("OSSBA").

[12]     *See*, 34 C.F.R. § 106.8(A) (School districts "must designate and authorize at least one employee to coordinate its efforts to comply with its responsibilities under this part, which employee must be referred to as the 'Title IX Coordinator.'").

following:

> The Title IX coordinator is responsible for coordinating the recipient's responses to all complaints involving possible sex discrimination.  This responsibility includes monitoring outcomes, identifying and addressing any patterns, and assessing effects on the campus climate.  Such coordination can help the recipient avoid Title IX violations, particularly violations involving sexual harassment and violence, by preventing incidents from recurring or becoming systemic problems that affect the wider school community.
>
> …
>
> The Title IX coordinator must have knowledge of the recipient's policies and procedures on sex discrimination and should be involved in the drafting and revision of such policies and procedures to help ensure that they comply with the requirements of Title IX. [13]

104.    Title IX regulations require that school districts ensure that Title IX Coordinators are appropriately trained and possess comprehensive knowledge regarding the district's responsibilities under Title IX.[14] Additionally, "[a]ll materials used to train Title IX Coordinators" must be publicly available on the school district's website.[15]

105.    Federal law further requires that school districts provide "the name or title, office address, electronic mail address, and telephone number of the employee or employees designated as the Title IX Coordinator" to all "students, parents or legal guardians of elementary and secondary school students." 34 C.F.R. § 106.8(A).

106.    The District did not provide the identity or contact information for any Title IX Coordinator prior to Fourkiller's July 2023 arrest. Nor did the District provide access to any

---

[13]    *See*, Dear Colleague Letter on Title IX Coordinators, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201504-title-ix-coordinators.pdf

[14]    *See*, 34 C.F.R. § 106.45(b)(1)(iii).

[15]    *See, id*. at §106.45(b)(10)(i)(D). The Sexual Harassment Policy also dictated that "[t]he district will also post the training materials used to train Title IX coordinators, investigators, and decisionmakers on the district website."

materials used to train the Title IX Coordinator on its website.

107.    With no Title IX coordinator, the District ostensibly did not employ anyone who had the requisite knowledge or training regarding how to investigate sexual harassment or appreciate the signs of sexual abuse.

108.    The Dear Colleague Letter makes clear that one of the purposes of a Title IX Coordinator is to ensure that school districts have at least one employee who has received training regarding the investigation and handling of sexual harassment complaints.[16]

109.    Because the District had not designated anyone to act as Title IX, it can be inferred that the District did not employ anyone who had been appropriately trained regarding the District's responsibilities to investigate sexual harassment and abuse, pursuant to Title IX.

110.    It is foreseeable that failing to employ an individual who is sufficiently trained to investigate sexual harassment and abuse pursuant to Title IX, will result in a school environment whereby students are not protected from sexual abuse.[17]

111.    Had the District appointed an appropriately trained Title IX Coordinator, District administrators would have been required to fully investigate the allegations and provide written findings from the investigation.

112.    However, because the District failed to initiate a formal investigation, there were no written findings from its investigation, making Fourkiller's predatory conduct impervious from

---

[16]    *See,* Dear Colleague Letter, *supra* note 14, at p. 2 ("the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not been sufficiently trained.").

[17]    *See,* Dear Colleague Letter, *supra* note 14, at p. 2 ("In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX.").

internal review.

113.    Furthermore, Title IX requires that after learning of a sexual harassment allegation, "[a] school must offer supportive measures that 'are designed to restore or preserve equal access to the [school's] education program or activity.'"[18]

114.    Guidance issued by the United States Department of Education dictates that following an allegation of sexual harassment "[t]he Title IX Coordinator must promptly contact the complainant to discuss the availability of supportive measures, regardless of whether a formal complaint is filed, and to explain the process for filing a formal complaint."[19]

115.    "Examples of supportive measures include 'counseling, extensions of deadlines or other course related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures."[20]

116.    Therefore, the District should have reached out to the parents who reported Defendant Fourkiller's behavior on October 27, 2022, and offered "measures designed to protect the safety of all parties or the [school's] educational environment or deter sexual harassment."[21]

117.    However, no such measures were offered during the 2022-2023 school year.

118.    It appears that following Fourkiller's June 2023 arrest, the District realized that it

---

[18]    *See*, Questions and Answers on the Title IX Regulations on Sexual Harassment (Updated June 28, 2022) at p. 18, United States Department of Education, (citing 34 C.F.R. § 106.30(a), https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf

[19]    *See, id.* at p. 13.

[20]    *See, id.* (citing 85 Fed. Reg. at 30,401).

[21]    *See*, 34 C.F.R. § 106.30(a).

did not have the necessary procedures and systems in place to protect its students from sexual harassment. For instance, on July 26, 2023, the Stilwell Board of Education voted to appoint Alisha Drain as the District's Title IX Coordinator, beginning in the 2023-2024 school year.

119.    Thereafter, on or around August 10, 2023, JOHN DOE and JANE DOE 2 received a letter from Alicia Drain, who introduced herself as the "Title IX Coordinator for Stilwell School District." In the letter, Ms. Drain requested to speak with JOHN DOE and JANE DOE 2 "to discuss resources, support services, and measures that can be implemented to protect and support your child in the upcoming school year."

120.    It was not until August 10, 2023, over 9 months after the parents October 27, 2022 report, that the District made any offers of supportive services to the Plaintiffs.

121.    While it is unclear as to who the Title IX coordinator was the times relevant herein, one thing is certain: Defendants Gaskins, Brunk, and Lea had no idea how to appropriately address reports that a District employee had sexually harassed/abused a student.

122.    The District may have enacted a Sexual Harassment Policy, but that policy was not worth the paper it was written on because District Administration was either unaware of what the policy required or simply failed to adhere to it.

123.    As a result, District administrators, like Defendant Lea, were left to investigate sexual harassment/abuse allegations and respond however they saw fit.

124.    Placing the responsibility of investigating allegations of sexual harassment/abuse on administrators who are untrained and otherwise incapable of doing so, resulted in a sexual assault investigation system whereby a site principal was permitted to unilaterally determine whether a complaint was sufficiently "sexual" to trigger an investigation.

125.    Finally, the District failed to ensure that its administrators and staff were aware of

their responsibilities under 10A O.S. § 1-2-101(B)(1) and 70 O.S. §1210.163(A), to report allegations of sexual abuse to law enforcement and DHS.

126.    In sum, the District's policies, practices, and customs resulted in a school environment where children were placed in the care of a known predator, with no supervision or protection.

- **IMPACT OF UNCHECKED HARASSMENT ON THE PLAINTIFFS**

127.    Given the Defendants' deliberate indifference in refusing to investigate Fourkiller and remove him from the classroom, the Plaintiffs were forced to be in the presence of their abuser all day, every day, while at school.

128.    The fear, anxiety, and stress the Plaintiffs experienced in having to be in the presence of their abuser daily was greatly enhanced by the District's failure and/or refusal to do anything in response to their October 27, 2022 reports to the District.

129.    The District's failure to protect the Plaintiffs from Fourkiller after being made aware of his predatory behavior made it such that the Plaintiffs could not feel safe while attending school at Stilwell Elementary School.

130.    In sum, the Plaintiffs were deprived of a normal childhood education due to the Defendants' failure to provide a safe learning environment while at Stilwell Elementary School.

131.    As a direct and proximate result of the educational environment created by the Defendants' deliberately indifferent response to the sexual assault and subsequent harassment, the Plaintiffs have suffered and continue to suffer psychological damage, emotional distress, loss of standing in their community, damage to their reputation, damage to their future relationships, and they have lost educational opportunities.

## CAUSES OF ACTION

### COUNT I - VIOLATION OF TITLE IX
### (20 U.S.C. § 1681, *ET SEQ.*)
### AS TO THE DISTRICT

132.    Paragraphs 1 through 131 are incorporated herein by reference.

133.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

134.    "All Oklahoma school districts, as recipients of federal funds, are subject to the requirements of Title IX."[22]

135.    As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.[23]

136.    Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

#### a.  *Deliberate Indifference to Known Sexual Harassment (Escue)*

137.    "Deliberate indifference to known acts of harassment ... amounts to an intentional

---

[22]    See, *Jane Doe No. 2 v. Oologah-Talala Indep. Sch. Dist. No. 4 of Rogers Cnty., Oklahoma,* No. 21-CV-240-TCK-SH, 2022 WL 16557607, at *11 (N.D. Okla. Oct. 31, 2022).

[23]    *See, Forth v. Laramie Cnty. Sch. Dist. No. 1,* 85 F.4th 1044, 1053 (10th Cir. 2023) ("The discrimination on the basis of sex that Title IX prohibits includes sexual harassment.").

violation of Title IX, capable of supporting a private damages action."[24]

138.    A school district is liable for violating Title IX "(1) only if the [school] remains deliberately indifferent to acts of harassment of which it has actual knowledge (2) the harassment was reported to an appropriate person ... with the authority to take corrective action to end the discrimination, and (3) the harassment was so severe, pervasive and objectively offensive that it ... deprived the victim of access to the educational benefits or opportunities provided by the school."[25]

139.    The District, through its administration and officials, had actual knowledge of the sexual assaults committed by Defendant Lawrence Fourkiller.

140.    At all relevant times herein, Defendants Geri Gaskins, Mark Lea, and Matthew Brunk had the capacity and authority to take remedial action to correct the sex-based harassment.

141.    The harassment suffered by the Plaintiffs was sufficiently severe and pervasive to create an abusive and sexually hostile educational environment that deprived the Plaintiffs of access to educational opportunities and benefits provided by the District.

142.    The District was obligated to address these reports, as teacher-on-student sexual assault and harassment are forms of sex discrimination prohibited by Title IX.

143.    The District was also obligated to address these reports under Title IX because the District had control over the teacher who sexually assaulted and harassed Plaintiffs, as well as the context in which the assaults and harassment occurred—namely, at Stilwell Elementary School.

144.    The District and its administration, including Defendants Geri Gaskins, Mark Lea, and Matthew Brunk had actual knowledge of Lawrence Fourkiller's predatory sexual behavior,

---

[24]    *See*, *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 643 (1999) (citing *Gebser v. Lago Vista Independent Sch. Dist.,* 524 U.S. 274 (1998)).

[25]    *See*, *Escue v. N. OK Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (internal citations and quotations omitted).

yet failed to investigate or discipline Lawrence Fourkiller in a timely manner and consistent with federal and state law.

145.    The individuals with actual knowledge, including Geri Gaskins, Mark Lea, and Matthew Brunk, had the authority and ability to investigate and take meaningful corrective action to end/prevent sexual assaults and harassment of the Plaintiffs but failed to do so.

146.    The District failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward The Plaintiffs

147.    Examples of the District's deliberate indifference includes, without limitation:

   a) Failing to take meaningful action to correct the conditions causing the sexual harassment and to prevent recurrence of the harassment;

   b) Failing to report suspected sexual assault in violation of, and as mandated by, Title IX;

   c) Failing to inform the Plaintiffs and their parents of their rights under Title IX or to direct the Plaintiffs to a Title IX coordinator; and

   d) Failing to provide The Plaintiffs any corrective measures after being informed of their allegations.

148.    The District's "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances."[26]

149.    Given the District's deliberate indifference, The Plaintiffs were deprived access to the educational benefits and/or opportunities provided by the District.

- ***Hostile Education Environment / District's Policy of Deliberate Indifference (Simpson)***

150.    According to the Tenth Circuit, a school district can also be held liable under Title

---

[26]    *See*, *Davis*, 526 U.S. at 648.

IX if it possesses an "official policy" of "deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of" Title IX.[27]

151.    Here, the District had implemented a Title IX system that was devoid of a Title IX Coordinator. As a result of having no Title IX Coordinator, the District had no employees who were aware of and/or capable of handling sexual harassment/abuse complaints.

152.    With no Title IX Coordinator to facilitate the investigation and handling of sexual harassment/abuse complaints, administrators, such as Defendant Lea, were left to investigate and address sexual harassment/abuse allegations however they saw fit.

153.    Moreover, it is clear from this incident that the District had wholly failed to train its administrators, staff, and agents in their responsibilities and

154.    In total, the District's deficient Title IX system resulted in credible sexual harassment/abuse allegations not being investigated and/or responded to.

155.    The District's deficient Title IX system made the Plaintiffs more vulnerable to the predatory behavior of Lawrence Fourkiller.

156.    The District's deficient Title IX policies and practices constituted disparate treatment of females and had a disparate impact on female students like the Plaintiffs.

157.    Given the District's deliberate indifference, the Plaintiffs were deprived access to the educational benefits and/or opportunities provided by the District.

158.     As a direct and proximate cause of the District's actions, the Plaintiffs have

---

[27]    *See*, *Simpson v. University of Colorado, Boulder,* 500 F.3d 1170 (10th Cir. 2007); *see also Miles v. Washington*, No. CIV-08-166-JHP, 2009 WL 259722, at *3 (E.D. Okla. Feb. 2, 2009) ("it can be deliberate indifference if a school fails to provide adequate training that is obviously necessary for the implementation of a program and that an official policy of the school can result from a situation where the school exercises significant control over the harasser and the environment in which the harassment occurs.") (citing *Simpson,* 500 F.3d 1170).

suffered emotional distress, psychological damage, and their character and standing in the community have suffered from the harassment fostered because of the District's deliberate indifference to their rights under Title IX.

**COUNT II - VIOLATION OF THE FOURTEENTH AMENDMENT'S PROMISE OF EQUAL PROTECTION**
**(42 U.S.C. § 1983)**
**(AS TO THE DISTRICT, GERI GASKINS, MARK LEA, AND MATTHEW BRUNK)**

159.    Paragraphs 1-158 are incorporated herein by reference.

160.    Under the Equal Protection Clause of the Fourteenth Amendment, the Plaintiffs had the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

*a.    Individual/Supervisory Liability of Defendants Gaskins, Lea, and Brunk*

161.    An individual school official violates the Equal Protection Clause and is subject to liability under § 1983, where the official exhibits "deliberate indifference to known sexual harassment."[28]

162.    Defendants Gaskins, Lea, and Brunk had actual knowledge of the sexual harassment and abuse committed by Defendant Lawrence Fourkiller through the multiple reports they received from concerned parents.

163.    Defendants Gaskins, Lea, and Brunk each violated the Plaintiffs' rights to equal access by:

   a)    Failing to take immediate and appropriate actions to investigate and/or remedy sexual harassment occurring at Stilwell Elementary School;

   b)    Failing to take prompt and effective steps to end sexual harassment, prevent its recurrence, and address its effects, whether or not the sexual harassment is the subject of a criminal investigation;

---

[28]    *See*, *Murrell v. School District No. 1*, 186 F. 3d 1238, 1250 (10th Cir. 1999).

    c)  Failing to provide an adequate grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.

164.    Defendants Gaskins, Lea, and Brunk failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward the Plaintiffs' right to equal protection.

165.    The Defendants' failure to respond to the alleged sexual harassment promptly and appropriately resulted in the Plaintiffs, on the basis of their sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program.

### b.   Municipal / "Monell" Liability against the District

166.    In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) the U.S. Supreme Court recognized that a municipality may be held liable for damages under § 1983.

167.    Applying *Monell*, the Tenth Circuit in *Murrell* explained that a school district may be liable sexual harassment under § 1983 when a school "employee's discriminatory actions are representative of an official policy or custom of the [school district] or are taken by an official with final policy making authority."[29]

168.    There is an affirmative causal link between Defendants Gaskins, Lea, and Brunk's failure to resolve the complaints of sexual harassment and the policies, practices, and/or customs described herein that were promulgated, created, and/or implemented by the District.

169.    The aforementioned acts and/or omissions of Defendants Gaskins, Lea, and Brunk in being deliberately indifferent to the Plaintiffs' right to equal access to an educational

---

[29]    *See*, *Murrell*, 186 F.3d at 1249.

environment free from harassment, are causally connected with the policies, practices and/or customs described herein which were promulgated, created, and/or implemented by the District.

170.    Such policies, practices, and/or customs include, but are not limited to:

a)  failing to report suspected sexual misconduct to law enforcement;

b)  failing to properly investigate criminal misconduct against students;

c)  discounting the credibility of students' allegations;

d)  failing to enact policies that require adherence to reporting requirements;

e)  failing to adequately train and supervise employees regarding the investigation and reporting of sexual abuse of students; and

f)  failing to train and supervise teachers, employees, and/or agents as to the requirement of reporting suspected sexual assault to the appropriate authorities.

171.    The Plaintiffs, other female students, and particularly those female students who were victimized by Lawrence Fourkiller, were intentionally treated differently than similarly situated District students, because the Defendants failed to promptly and effectively address and remedy instances of sexual harassment at the hands of Lawrence Fourkiller, and thereby tolerated his sexual harassment, and enabled Lawrence Fourkiller to engage in continued sex discrimination/harassment of female students, including the Plaintiffs.

172.    The District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

173.    The District had knowledge (either actual or constructive knowledge), or it was obvious, that the sexual harassment/abuse policies, practices, and/or customs in place at Stilwell Elementary School posed substantial risks to the health and safety of students like the Plaintiffs.

174.    Defendants' actions, or lack thereof, were the proximate cause of the Plaintiffs' emotional distress and psychological damage, and their character and standing in the community

have suffered from the harassment fostered as a result of the District's deliberate indifference to their right to equal protection under the Fourteenth Amendment.

175.    The Plaintiffs have suffered emotional distress and psychological and physical injuries, and their character and standing in their community have suffered from the harassment fostered as a direct and proximate result of the Defendants' deliberate indifference to their rights under the Fourteenth Amendment.

### COUNT III - VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS (42 U.S.C. § 1983) (*AS TO THE DISTRICT, GERI GASKINS, MARK LEA, AND MATTHEW BRUNK*)

176.    Paragraphs 1 through 175 are incorporated herein by reference.

177.    The Plaintiffs had a clearly established constitutional right to personal security, bodily integrity, due process, and physical safety, all protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### a.    *Individual/Supervisory Liability of Defendants Gaskins, Lea, and Brunk*

178.    Defendants Geri Gaskins, Mark Lea, and Matthew Brunk created and/or increased the Plaintiffs' vulnerability to the danger posed by Lawrence Fourkiller through numerous affirmative acts, including but not limited to:

    a)  Ignoring numerous allegations of sexual misconduct by Fourkiller;

    b)  Not immediately removing Fourkiller from campus after receiving notice of his misconduct;

    c)  Continuing to allow Fourkiller unfettered and unsupervised access to students;

    d)  Not investigating allegations of misconduct by Fourkiller and/or

    e)  Not immediately reporting the allegations of misconduct to law enforcement and/or the students' parents.

179.    These affirmative acts by the Defendants, taken as a whole and in the context of

known abuse in the District, increased the danger to the Plaintiffs and amount to egregious and outrageous behavior.

180.    These affirmative actions taken by Defendants Geri Gaskins, Mark Lea, and Matthew Brunk put the Plaintiffs and other female students at Stilwell Elementary School at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being abused while at Stilwell Elementary School. Indeed, the Plaintiffs and the other victims were abused by Fourkiller after the District had notice of Fourkiller's misconduct.

181.    Defendants Geri Gaskins, Mark Lea, and Matthew Brunk's actions and inactions created an opportunity for Fourkiller to continue to abuse the Plaintiffs and other female students at Stilwell Elementary School, as those actions stripped necessary aid from Plaintiffs and others.

182.    Reporting Fourkiller's misconduct to law enforcement and/or DHS could have enabled law enforcement, regulatory bodies, or parents to have sheltered the Plaintiffs and other female students at Stilwell Elementary School from Fourkiller's predatory behavior, including by removing Fourkiller from the District, removing Plaintiffs and/or other students from the District, or otherwise preventing Fourkiller from further access to Stilwell Elementary School students, including the Plaintiffs.

183.    When viewed in total, the affirmative actions taken by Defendants Geri Gaskins, Mark Lea, and Matthew Brunk were conscious shocking.

184.    Defendants Geri Gaskins, Mark Lea, and Matthew Brunk's conduct, which caused the damages referenced herein, showed complete indifference to and/or conscious disregard for the health and safety of the Plaintiffs and others, justifying the imposition of punitive damages.

### b.  *Municipal / "Monell" Liability against the District*

134.    The affirmative actions taken by Defendants Geri Gaskins, Mark Lea, and Matthew

Brunk, which created and/or increased the Plaintiffs' vulnerability to the danger, were in furtherance of and consistent with policies, customs, and/or practices that had been promulgated, created, and/or implemented by the District.

135.    Such policies include:

a) allowing District employees accused of sexual harassment/abuse to remain on campus;

b) allowing students to remain in classrooms occupied by employees accused of sexual harassment/abuse;

c) continuing to employ staff members accused of sexual harassment/abuse, such as Fourkiller, and allowing them unfettered, unsupervised interaction with students;

d) allowing untrained administrators to conduct investigations into staff members accused of sexual harassment/abuse;

e) discounting the credibility of students' allegations in favor of the staff members accused of sexual harassment/abuse.

136.    The District had knowledge (either actual or constructive knowledge), or it was obvious, that the above-identified policies, practices, and/or customs posed substantial risks to the personal security, bodily integrity, and physical safety of District students.

137.    The District's lacking policies, practices, and customs encouraged further and ongoing abuse by sending the message to Lawrence Fourkiller that the District tacitly approved of his unwanted contacts with female students and would not interfere in any way.

138.    The District's policies, practices and/or customs identified above are attributable to District policymakers including, but not limited to, Superintendent Geri Gilstrap, Elementary School Principal Mark Lea, and then Assistant Superintendent Matthew Brunk.[30]

---

[30]    Moreover, the acts of these Defendants constitute an official policy for the purposes of *Monell* liability. See *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) ("if an official, who possesses final policymaking authority in a certain area, makes a decision—even if it is

139.    The affirmative actions of the District in promulgating the above referenced policies, practices and/or customs, increased the danger to the Plaintiffs and when viewed in total, is conscience shocking.

140.    The actions of the District, Geri Gaskins, Mark Lea, and Matthew Brunk were arbitrary, capricious, and wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.

141.    As a result of the conduct of the District, Geri Gaskins, Mark Lea, and Matthew Brunk, The Plaintiffs were deprived of a safe learning environment free from unwanted sexual conduct, and further deprived of their rights to an educational environment free from harassment. The Plaintiffs have suffered further damages, including counseling and/or medical expenses, severe emotional distress, humiliation, embarrassment, attorneys' fees, and costs to address the conduct set forth above, and punitive damages.

**CLAIM IV - NEGLIGENCE**
**(51 O.S. § 151, *ET SEQ.*)**
***(AS TO THE DISTRICT)***

142.    Paragraphs 1-141 are incorporated herein by reference.

143.    The District owed the Plaintiffs a duty to provide a safe educational environment free from sexual abuse, sexual assault, sexual harassment, and sexual predatory behavior by its teachers and coaches.[31]

144.    The District, by and through its employee(s), staff or agents breached these duties by failing to take any remedial action to correct, eliminate, and/or prevent the recurrence of the

---

specific to a particular situation—that decision constitutes municipal policy for § 1983 purposes.").

[31]    *See*, *J.W. v. Independent Sch. Dist. No. 10 of Dewey Cnty.*, 2021 OK CIV APP 34, 500 P.3d 649.

sexual harassment described above once its employees perceived, knew or had reason to believe that Defendant Fourkiller posed a risk of sexual harassment, sexual misconduct, and sexual assault to District students.

145.   Despite District policy requiring that an investigation be conducted into allegations of sexual misconduct, District administration failed and/or refused to do so.

146.   The actions of District administration, including Defendants Geri Gaskins, Mark Lea, and Matthew Brunk, were taken in the course and scope of their employment with the District.

147.   The District is liable for the actions of Geri Gaskins, Mark Lea, and Matthew Brunk pursuant to the Oklahoma Government Tort Claim Act, 51 O.S. § 151, *et seq*.

148.   The District further breached its duties to the Plaintiffs by violating of one or more Oklahoma Statutes, including, but not limited to 70 O.S. §1210.163 and 10A O.S. § 1-2-101(B)(2)(a), by failing to promptly alert the appropriate authorities of the alleged sexual harassment/assault.

149.   The Plaintiffs are in the class of persons intended to be protected by the above referenced Oklahoma statutes related to school safety. The statutes and ordinances the Defendants violated were intended to prevent the harassment suffered by the Plaintiffs.

150.   The District also owed a duty to the Plaintiffs and all other students to hire qualified, competent employees to teach, coach, and supervise the students of that community. The District similarly owed a duty to train and supervise any and all employees in how to supervise and protect students.

151.   The District breached its duty by:

a.   failing to Supervise Fourkiller after receiving reports of sexual misconduct, sexual harassment, and sexual assaults from other students;

b.   Failing to train its employees and/or agents regarding policies and procedures related

to sexual harassment, sexual misconduct, and sexual assault; and

c. Failing to protect Plaintiffs and other female students from harm while in the District's control or control of its agents and/or employees.

152.    These breaches were the actual and proximate cause of The Plaintiffs' injuries.

153.    As a result of the District's negligence, the Plaintiffs have suffered psychological damage, emotional distress, loss of standing in their community, damage to their reputation, their future relationships have been negatively affected, and they have lost educational opportunities and actual damages in excess of seventy-five thousand dollars ($75,000.00).

### COUNT V -  VIOLATION OF THE PLAINTIFFS' FOURTEENTH AMENDMENT RIGHTS
### (42 U.S.C. § 1983)
### (AS TO DEFENDANT LAWRENCE FOURKILLER)

154.    Paragraphs 1-153 are incorporated herein by reference.

155.    The Plaintiffs had a constitutional right to personal security, bodily integrity, to due process, and to be secure and to be left alone, all protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution

156.    In his conduct as a teacher at Stilwell Elementary School, Defendant Lawrence Fourkiller at all times was acting under color of state law as an agent and employee of the District. Defendant Lawrence Fourkiller was acting in the course and scope of his duties as a public-school teacher during the times that he engaged in sexual misconduct with the Plaintiffs and other District students.

157.    Defendant Lawrence Fourkiller's conduct was performed in bad faith, with malice and/or reckless disregard for the emotional and/or physical health of the Plaintiffs and constitutes egregious and outrageous behavior.

158.    Defendant Lawrence Fourkiller's sexual misconduct with the Plaintiffs while they were minor students violated the Plaintiffs' constitutional right of substantive due process, including, but not limited to, her right to bodily integrity, personal privacy, and bodily security.[32]

159.    The facts and circumstances of this case demonstrate that Defendant Lawrence Fourkiller's conduct toward the Plaintiffs was clearly unreasonable.

160.    As a result of Defendant Lawrence Fourkiller's conduct, the Plaintiffs have suffered damages including counseling and/or medical expenses, severe emotional distress, humiliation, embarrassment, attorneys' fees, and costs to address the conduct set forth above, and punitive damages.

### CLAIM VI - SEXUAL ASSAULT AND BATTERY OF A MINOR
### (21 O.S. § 843.5)
### *(AS TO DEFENDANT FOURKILLER)*

161.    Paragraphs 1-160 are incorporated herein by reference.

162.    Defendant Lawrence Fourkiller engaged in intentional sexual contact with the Plaintiffs while they were minor students under his supervision. Such contact was in violation of 21 O.S. § 843.5.

163.    Defendant Lawrence Fourkiller knew or reasonably should have known that the Plaintiffs were minors.

164.    Defendant Lawrence Fourkiller's conduct inflicted serious emotional distress.

165.    Defendant Lawrence Fourkiller's conduct was performed in bad faith, with malice and/or reckless disregard for the emotional health of the Plaintiffs.

---

[32]    "Sexual assault or molestation by a schoolteacher violates a student's substantive due process rights." *Doe v. Indep. Sch. Dist. No. 93 of Pottawatomie Cnty., Oklahoma*, No. CIV-23-473-R, 2023 WL 9018380, at *2 (W.D. Okla. Dec. 29, 2023) (citing *Abeyta ex rel. Martinez v. Chama Valley Independent School Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996)).

166.   As a direct and proximate result of Defendant Lawrence Fourkiller's conduct, the Plaintiffs have suffered damages, including counseling and/or medical expenses, severe emotional distress, humiliation, embarrassment, attorneys' fees, and costs to address the conduct set forth above, and punitive damages.

### CLAIM VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (AS TO DEFENDANT LAWRENCE FOURKILLER)

167.   Paragraphs 1-166 are incorporated herein by reference.

168.   Lawrence Fourkiller engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress to the Plaintiffs.

169.   Lawrence Fourkiller's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable.

170.   Lawrence Fourkiller's conduct was performed in bad faith, with malice and/or reckless disregard for the emotional and physical health of the Plaintiffs.

171.   Lawrence Fourkiller's conduct did in fact cause the Plaintiffs severe emotional distress.

172.   As a direct and proximate result of Lawrence Fourkiller's conduct, the Plaintiffs have suffered damages, including counseling and/or medical expenses, severe emotional distress, humiliation, embarrassment, attorneys' fees, and costs to address the conduct set forth above, and punitive damages.

**WHEREFORE,** based on the foregoing, the Plaintiffs pray that this Court grant the relief sought including, but not limited to actual damages, including, but not limited to, payment of the Plaintiffs' expenses incurred as a consequence of the sexual assaults, deprivation of equal access to the educational opportunities and benefits provided by the District; past, present and future

emotional pain and suffering, ongoing mental anguish, loss of past, present, future enjoyment of life, loss of future earnings and earning capacity, in excess of seventy-five thousand dollars ($75,000.00), attorney's fees, punitive damages in excess of seventy-five thousand dollars ($75,000.00), and all other relied deemed appropriate by this Court.

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ Donald E. Smolen, II
Donald E. Smolen, II, OBA #19944
John Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
jack@smolen.law

AND

F. Hansen Dirani, OBA # 17856
Law Offices of
Jeff Martin and Hansen Dirani
Spirit Bank Tower
1800 S. Baltimore Ave.
Tenth Floor
Tulsa, OK 74119
(918) 728-8888
(918) 742-0275 (fax)
Hansen@callhansen.com

*Attorneys for Plaintiffs*